IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-00252-M

| | |
|---|---|
| CLEAN & SOBER MEDIA LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| RENEW COUNSELING CENTER OF NC, LLC, | ) |
| NORMA NEGRON, | ) |
| GIANI RIVERA, and | ) |
| *DOES 1-10*, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on Plaintiff's "Motion for Ex Parte Application for the Issuance of a Temporary Restraining Order and Order to Show Cause Re[garding] a Preliminary Injunction" [DE 33]. On November 30, 2020, the court denied the motion in part with respect to Plaintiff's request for a temporary restraining order and permitted briefing to proceed on Plaintiff's request for a preliminary injunction. DE 41. For the reasons that follow, the court finds that Plaintiff fails to demonstrate it would suffer irreparable harm in the absence of a preliminary injunction and, thus, denies the motion.

In this copyright infringement action, Plaintiff seeks a preliminary injunction directing Defendants to remove from Renew Counseling Center of NC, LLC's ("the company") website approximately 1,150 articles purchased and published by Plaintiff. Defendants filed an Answer on July 27, 2020 admitting that a "former employee used an RSS web feed to pull articles from [Plaintiff's] website and post them automatically to Defendants' website" and asserting that "Defendants immediately disabled the RSS web feed and removed the articles upon discovery."

DE 11 at 4-5. However, in the present motion, Plaintiff contends that the articles remain on Defendants' website. *See* DE 33. Specifically, Plaintiff informed the court at the November 30, 2020 status conference that the parties' counsel had conferred at the Rule 26(f) conference (presumably in October 2020 (*see* DE 32)) regarding whether the alleged infringing conduct had ceased, and Plaintiff was assured that it had. Plaintiff then retained an expert who discovered that while Defendants removed the link by which articles were copied from Plaintiff's website to Defendants' website, Defendants' website still contained 1,156 articles copied from Plaintiff and viewable by the public.

In their response brief filed December 15, 2020, Defendants contend that upon learning of the alleged infringing conduct when this action was filed, Defendants took action to remove the articles from the website. Their website consultant no longer worked for the company and the company's owner, Defendant Norma Negron, was educated in neither the creation nor management of websites; thus, Negron relied on her son to remove the articles. Apparently, his actions were inadequate; Defendants contend that since receiving notification of the deficiency from the Plaintiff when it filed the present motion, Defendants have removed nearly all content (whether allegedly infringing or not) from the website and the WordPress server ("library") that hosted the articles.

Plaintiff replies that Defendants' actions are "insufficient" and asserts that "Plaintiff suffers under the threat that Defendants will continue to infringe absent preliminary relief," because Defendants "cannot be trusted." Reply at 7.

The Fourth Circuit instructs that a preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Pashby v. Delia*, 709 F.3d 307,

319 (4th Cir. 2013)). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Mandatory preliminary injunctions – those that alter rather than preserve the status quo – are typically disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 n.8 (4th Cir.), *cert. denied sub nom. Givens v. Mountain Valley Pipeline, LLC*, 140 S. Ct. 300, 205 L. Ed. 2d 199 (2019).

"While irreparable harm is only one of the four factors courts must consider in determining whether to grant injunctions, the Supreme Court has made clear that, regardless of the other factors, '[t]he equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017) (*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The plaintiff must make a "clear showing of irreparable harm . . ., and the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal quotation marks omitted)). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Di Biase*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter*, 555 U.S. at 22). "Both the Supreme Court and this court have emphasized . . . that the existence of past harm is far from dispositive on the question of irreparable future harm." *SAS Inst., Inc.*, 874 F.3d at 386.

In this case, the court finds that even if Plaintiff could demonstrate a likelihood of success

on the merits (based, for example, on Defendants' admission in the Answer that a "former employee used an RSS web feed to pull articles from *The Fix* website and post them automatically to Defendants' website"), the balance of equities tips in their favor (based, for example, on allegations that Defendants' conduct caused *The Fix*'s Google ranking to plummet, which caused *The Fix* to experience significant declines in viewership, which then led to a substantial decrease in advertisement revenues and layoffs of several employees), and an injunction is in the public interest, the court finds that Plaintiff fails to establish the likelihood of irreparable harm absent preliminary injunctive relief.

Through its motion, Plaintiff asks the court to "enter . . . a preliminary injunction requiring Defendants from continuing to infringe Plaintiff's copyrights by hosting or publishing any of Plaintiff's original content on its website." Mot. at 2; *see also* Memo. at 13 (requests that the court "enjoin Defendants from continuing to infringe Plaintiff's copyrights and requir[e] Defendants to remove all of the infringed content from their website and their servers."); Reply at 8-9 (asks the court to "issue a preliminary injunction enjoining Defendants from continuing to infringe Plaintiff's copyrights and requiring Defendants to remove, or confirm the removal, [of all] the infringed content from their website and from servers under their custody or control."). Importantly, although Plaintiff apparently has the ability to determine whether infringed content remains on Defendants' website (Memo. at 5), Plaintiff does not rebut Defendants' contention that all infringing articles or other content on the company's website and the WordPress server have been removed. Instead, Plaintiff attempts to convince the court that Defendants "cannot be trusted" and that a "potential" for future harm exists saying: "What is to prevent Defendants from rebuilding their website by hiring another contractor who goes ahead and infringes Plaintiff's content again? ***Nothing***. They accept *no* responsibility." Reply at 7.

4

The court is not convinced. Plaintiff relies solely on Defendants' past conduct to demonstrate a likelihood of future irreparable harm, but this is insufficient. The Fourth Circuit holds that "the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Scotts Co.*, 315 F.3d at 283; *see also SAS Inst., Inc.*, 874 F.3d at 386 ("Both the Supreme Court and this court have emphasized . . . that the existence of past harm is far from dispositive on the question of irreparable future harm."). In this case, Defendants have asserted, without rebuttal, that no infringing content remains on their website and server(s). The parties have engaged in nearly four months of discovery and there is no indication that Defendants' assertion is untrue. At this juncture, the court will not issue a preliminary injunction "requiring Defendants to remove, or confirm the removal, [of all] the infringed content from their website and from servers under their custody or control" based on mere speculation that Plaintiff's articles *may* remain on the website/server or that infringement *might* continue. *See Di Biase*, 872 F.3d at 230 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy . . . ." (quoting *Winter*, 555 U.S. at 22)). Without more, the court is proscribed from entering the requested mandatory injunction. The court also disagrees with Plaintiff that Defendants have accepted "*no* responsibility" for the alleged infringement; by removing the articles from their website and server, Defendants have taken at least some responsibility for the matter.

The court notes that Plaintiff seeks both preliminary and permanent injunctive relief in the operative pleading. Compl., DE 1 at 28. The findings made here relate only to Plaintiff's request for preliminary injunctive relief; the court will consider Plaintiff's request for a permanent injunction at the appropriate time.

5

Accordingly, Plaintiff's motion for the issuance of a preliminary injunction in this case [DE 33] is DENIED.

SO ORDERED this 21ST day of May, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE